IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

John L. Penza, #241842,                    )        C. A. No. 2:07-0518-JFA-RSC
                                           )
                Petitioner,                )
                                           )
         -versus-                          )        **REPORT AND RECOMMENDATION**
                                           )
Warden, Lee Correctional                   )
Institution,                               )
                                           )
                Respondents.               )

        This habeas corpus petition under 28 U.S.C. § 2254 brought

by a state prisoner proceeding pro se is before the undersigned

United States Magistrate Judge for a report and recommendation on

the respondents' summary judgment motion filed on July 5, 2007.

28 U.S.C. § 636(b).

## PROCEDURAL HISTORY

        The petitioner, John L. Penza, is currently incarcerated in

Lee Correctional Institution of the South Carolina Department of

Corrections pursuant to orders of commitment from the Clerk of

Court of Charleston County.  Petitioner was indicted in June 1994

on two counts of murder (94-GS-10-3303 and 3304).  Lionel S.

Lofton, Esquire, represented Petitioner on the charges.  A jury

trial was held June 9-12, 1997, before the Honorable Charles W.

Whetstone, Jr.  The jury convicted Petitioner as charged. (PCR

App. p. 863, line 23 - p. 864, line 5).  The judge sentenced

Petitioner to two consecutive life terms. (PCR App. p. 874, lines

1

15-18).  Petitioner filed a timely notice of the intent to appeal.

Joseph L. Savitz, III, Deputy Chief Attorney of the South Carolina Office of Appellate Defense, represented Petitioner on appeal.  Appellate counsel filed a Final Brief of Appellant in the Supreme Court of South Carolina on September 21, 1999, and raised the following issues:

> 1.   The judge erred by refusing to sever appellant's trial from James McVay's, since a substantial part of McVay's defense consisted of a sustained attack on appellant's character.
>
> 2.   The judge erred by refusing to suppress evidence appellant shot a crack dealer several hours before the murders of Olivia Mosier and Felicia Ballard since this alleged prior crime was either wholly inadmissible under Evidence Rule 404 or unduly prejudicial under Rule 403.
>
> 3.   The judge erred by refusing to direct a verdict acquitting appellant of Felicia Ballard's murder.

(PCR App. p. 947).

The Supreme Court of South Carolina affirmed the convictions and sentences in State v. Penza, Memorandum Opinion No. 2001-MO-071 (S.C.Sup.Ct. filed November 16, 2001).  (PCR App. pp. 970-971).  The court issued the remittitur on December 4, 2001.

On July 11, 2002, Petitioner timely filed an application for post-conviction relief ("PCR"), in which he raised the following claims:

> (a)   Ineffective assistance of trial counsel;

2

(b)   Ineffective assistance of appellate counsel;

(c)   subject matter jurisdiction.

(PCR App. p. 974).

In a separate brief, Petitioner raised the following specific claims:

> A.   Was trial counsel ineffective in not objecting to the trial judge's opinionated comments to the jury?
>
> B.   Was trial counsel ineffective in failing to request an adequate jury instruction on scope, application and weight of bartered testimony?
>
> C.   Was counsel ineffective for failing to object to improper direct examination of State's witness James McVay?
>
> D.   Was counsel ineffective for failing to object to improper cross-examination of State's witness Bridgette Doyle by co-defendant's defense counsel?
>
> E.   Was defense counsel ineffective in failing to object to the improper comments of the Applicant's silence?
>
> F.   Was defense counsel ineffective in failing to object to the solicitor's improper vouching for; and pitting of the State witnesses?
>
> G.   Was defense counsel ineffective in failing to object to the highly improper use of the Applicant's alleged nick-name (MAC DADDY) in his closing to the jury?
>
> H.   Was defense counsel ineffective in failing to object to the trial Court's malice charge to the jury?
>
> I.   Was defense counsel ineffective in failing to cross-examine two State's witness [sic], and failing to introduce into evidence at trial vital defense documentation within his possession?

3

J.   Was there a fatal variance between the
indictments and the evidence introduced at trial?

K.   Was Appellate counsel ineffective in failing
to present a vital issue of due process in the
Applicant's behalf on Direct Appeal?

L.   Was Appellate counsel ineffective in failing
to fully Brief the issue of the Motion for
Severance by the Applicant's defense counsel on
Direct Appeal to the South Carolina Supreme Court?

(PCR App. p. 978).

E. Ellen Howard, Esquire, was appointed to represent

Petitioner in the PCR action.  On August 27, 2003, PCR counsel

filed an amendment to include the following issues:

1.   Appellate counsel was ineffective for failing
to point out relevant, vital points of prejudice
regarding the severance issue on direct appeal.

2.   Trial counsel was ineffective for failing to
object to co-defendant's counsel eliciting
testimony regarding applicant's sexual
preferences.

3.   Trial counsel was ineffective for failing to
object to counsel for co-defendant eliciting
testimony from state' witness Laura Harrelson
regarding applicant's temper.

4.   Trial counsel was ineffective for failing to
object to counsel for co-defendant's references to
an unrelated assault allegedly committed by
applicant.

5.   Trial counsel was ineffective for failing to
object to the trial judge's instruction on other
crimes.

6.   Trial counsel was ineffective for failing to
object to the judge's instruction to the jury
regarding evidence of a prior record of a
defendant.

4

> 7.    Appellate counsel was ineffective for failing
> to show the prejudice applicant suffered during
> re-direct examination of witness Paula Nero.
>
> 8.    Trial counsel was ineffective for failing to
> object to testimony that applicant committed the
> crime of forgery.

(PCR App. pp. 991-992).

The state made its return on February 27, 2004. (PCR App.
pp. 993-1006). At the beginning of the evidentiary hearing,
counsel for Petitioner again amended the application to include
the following grounds:

> 1.    Trial counsel was ineffective when he allowed
> Applicant's Confrontation Right to be offended by
> not appearing at a preliminary hearing on Berkeley
> County charges.
>
> 2.    Trial counsel's multiple failures to object
> resulted in cumulative error.
>
> 3.    Petitioner's right to Due Process was
> offended by delay in the direct appeal process.
>
> 4.    Trial counsel erred by allowing the
> appointment of Juror Far as the foreman when that
> was the juror who had seen Applicant leaving the
> courtroom in handcuffs.
>
> 5.    The State knowingly used perjured testimony.

(PCR App. p. 1012, line 22 – p. 1014, line 4).

An evidentiary hearing was held on March 12, 2004, before
the Honorable Roger M. Young who issued a written order of
dismissal on April 13, 2004. (PCR App. pp. 1190-1224). Petitioner
filed a timely notice of intent to appeal the denial.

PCR counsel continued to represent Petitioner on appeal, and filed a Petition for Writ of Certiorari on February 25, 2005, in the Supreme Court of South Carolina, and raised the following issues:

> 1.   Did the PCR judge correctly conclude that defense counsel was not ineffective for failing to object to the repeated use of petitioner's alleged nick-name ("Mac Daddy") which was used at least fifty-seven times during the trial by the solicitor and co-defendant's counsel?
>
> 2.   Did the PCR judge correctly conclude that trial counsel was not ineffective for failing to object to counsel for co-defendant's references to an unrelated assault on a female allegedly committed by Petitioner?
>
> 3.   Did the PCR judge correctly conclude that appellate counsel was not ineffective when he failed to include the strong arm robbery of a crack dealer ("Jesse") in his brief when it had been properly objected to by trial counsel?

(Petition for Writ of Certiorari, p. 2).

The State made its return to the petition on June 10, 2005. Petitioner filed a reply to the return on or about June 28, 2005. The South Carolina Supreme Court denied the petition on October 4, 2006, and issued the remittitur on October 23, 2006.

Attached and incorporated by reference are the following documents:

> 1.   PCR Appendix containing:
>
> a.   June 9, 1997 Trial Transcript;
> b.   Motion for Severance and Memorandum In Support Thereof:
> c.   Order (denying motion for severance);
> d.   May 20, 1997 Motion Hearing;

6

    e. Defendant's Motions In Limine Re:
   Prior Bad Acts;
    f. Initial Brief of Appellant;
    g. Final Brief of Appellant;
    h. <u>State v. Penza</u>, Memorandum Opinion No.
   2001-MO-071 (S.C.Sup.Ct. filed November 16,
   2001);
    i. PCR Application;
    j. Initial Brief of Applicant;
    k. PCR Application Amendments;
    l. Return (to PCR Application);
    m. March 12, 2004 PCR Hearing Transcript;
    n. March 12, 2004 PCR Hearing Exhibits;
    o. Order of Dismissal;
  2. Final Brief of Respondent;
  3. December 4, 2001 Remittitur Letter (Direct
Appeal Action);
  4. Petition for Writ of Certiorari;
  5. Return to Petition for Writ of Certiorari;
  6. Reply to State's Return to Petition for Writ
of Certiorari;
  7. October 4, 2006 Letter Order (denying
petition);
  8. October 23, 2006 Remittitur Letter (PCR
Appeal);
  9. Indictments.

## GROUNDS FOR RELIEF

In his <u>pro</u> <u>se</u> Petition for Writ of Habeas Corpus, Petitioner

makes the following claims of error:

   Ground one:  Ineffective Assistance of Counsel
   during trial;

    Supporting Facts:   During my trial, my
   attorney allowed an unrelated assalt [sic] against
   a woman in a totally different county to become a
   matter of record. At no time did trial counsel
   object to this alleged assalt [sic] testimony.
   This prejudiced me extreemly [sic] due to the fact
   that I was on trial for allegedly murdering 2
   female victims as it were.

   Ground two:  Ineffective Assistance of Appellate
   counsel;

Supporting Facts:    Appellate Counsel failed to raise, brief, and argue regarding yet another uncharged crime that The trial judge ruled was inadmissible but later overruled his own ruling and let in, over Trial counsel's objections, it was allowed into evidence via testimony from my co-defendant even though this uncharged crime was objected to by trial counsel. It involved an armed robbery in Berkeley County approximately one week prior to the incident for which I was on trial.

Ground three: Due Process Violation due to ineffective Assistance of Trial Counsel;

Supporting Facts:    During the course of my trial a nickname [Mack Daddy] was attributed to me and used at least 57 (Fifty seven) times by the Solicitor, and co-defendants counsel.    The nickname Mack Daddy was never used by any of the witnesses when refering [sic] to me but was instead a "persona" counsel for co-defendant McVay "created" to convey to the jury that I was a monster and a control freak.

Ground four:    Denial of a Severance Motion by trial Judge;

Supporting Facts:    Long before trial during pretrial hearings counsel for co-defendant McVay quite frankly admitted that the crux of his defense involved prejudicing me.    However the trial judge's position was since it was the co-defendant's counsel doing the prejudicing and not the state he did not owe me any protection from such instances of prejudice that would (and did) arise during the course of the trial.

Ground five: Introduction of an uncharged crime, to wit; an armed Robbery committed in Charleston County Allegedly by petitioner.    The Solicitor argued that his firm belief was that this alleged Armed Robbery was the reason why the murders ended up being committed, which is why the judge overruled his own ruling reversing himself and let his testimony in.    Yet nothing in the testimony throughout the duration of the trial established that the alleged armed Robbery was in fact the reason for the subsequent homocides [sic].

8

(Habeas Petition, pp. 6-11 and attachment).

The petitioner was provided a copy of the respondents' summary judgment motion on July 5, 2007, and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). The petitioner responded to the motion on August 20, 2007, and withdrew the third ground for relief. Hence it appears consideration of the motion is appropriate.

**APPLICABLE LAW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, is applicable to this action filed in 2007. Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e)(1) In a proceeding instituted by an
> application for a writ of habeas corpus by a
> person in custody pursuant to the judgment of a
> State court, a determination of a factual issue
> made by a State court shall be presumed to be
> correct. The applicant shall have the burden of
> rebutting the presumption of correctness by clear
> and convincing evidence.

The Supreme Court expounded upon this language in Williams

v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). Writing for the

majority with respect to this matter, Justice O'Connor

stated that a state court's decision can be contrary to the

Supreme Court's precedent in two ways: first, "if the state court

arrives at a conclusion opposite to that reached by the Court on

a question of law. Second, a state-court decision is also

contrary to the Court's precedent if the state court confronts

facts that are materially indistinguishable from a relevant

Supreme Court precedent and arrives at a result opposite to" that

of the Supreme Court. Id. at 1519.

Justice O'Connor further stated that "[t]he text of §

2254(d)(1) ... suggests that the state court's decision must be

substantially different from the relevant precedent of the

Court." Id. She added that a "state-court decision will also be

contrary to the Court's clearly established precedent if the

state court confronts a set of facts that are materially

indistinguishable from a decision of the Court and nevertheless

arrives at a result different from the Court precedent." Id. at

1519-20. Even if "the federal court considering the prisoner's

10

habeas application might reach a different result applying" relevant Supreme Court precedent, so long as the state court applied the correct legal rule from Supreme Court cases, such a "run-of-the-mill" state court decision could not be deemed "contrary to" Supreme Court precedent.  Id. at 1520.

As for the "unreasonable application" prong of § 2254(d)(1), Justice O'Connor stated that a state court decision involves an unreasonable application of the Court's precedent if "the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of the Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id.  Justice O'Connor added that "[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 1522.  In making the "unreasonable application" inquiry, "a federal habeas court ... should ask

11

whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

In another change brought by the AEDPA, 28 U.S.C. § 2254(e)(1) now states that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. ... The touchstone for a reasonable determination is 'whether the determination is at least minimally consistent with the facts and circumstances of the case.'" Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.), cert. denied, 522 U.S. 819 (1997).

## THE HABEAS CORPUS EXHAUSTION REQUIREMENT

Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas corpus. Claims not so raised are considered defaulted." Breard v. Green, 523 U.S. 371, 375, 118 S.Ct. 1352 (1998), citing Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497 (1977); see also, 28 U.S.C. § 2254(b). The theory of exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions. See generally, O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728, (1999). The court's exhaustion requirements under § 2254 are explained in

12

Matthews v. Evatt, 105 F.3d 907, 910-911 (4th Cir.), cert. denied, 522 U.S. 833, 118 S.Ct. 102 (1997).  In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims.  Thus, a federal habeas court may consider only those issues which have been properly presented to the highest state courts with jurisdiction to decide them.  The burden of proving that a claim has been exhausted lies with the petitioner.  The exhaustion requirement, though not jurisdictional, is strictly enforced.  (Citations omitted).

Additionally, a claim has not been exhausted unless the substance of a petitioner's claim is "fairly presented" to the state courts.  The Matthews court explained, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not suffice.  In other words, fair presentation contemplates that both operative facts and the controlling legal principles must be presented to the state court."  Matthews v. Evatt, 105 F.3d at 911.

In order to exhaust his collateral claims in state court, a South Carolina habeas corpus petitioner must pursue a direct appeal and/or file an application for relief under the South

13

Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10 - 160.  As the South Carolina Supreme Court has explained:  "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."  In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).

Petitioner here had a direct appeal which was unsuccessful. Petitioner also had a full round of PCR proceedings.  His PCR application was denied at the trial court level, and he had a timely petition for a writ of certiorari presenting some, but not all, of his PCR grounds.  The South Carolina Supreme Court denied the petition.  Thus, he has exhausted his direct appeal and his PCR remedy.  Petitioner here has no remaining state remedies which can be pursued.

**PROCEDURAL DEFAULT**

When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he will be procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural default of a constitutional claim in earlier state

14

proceedings forecloses consideration by the federal courts.  See, e.g., Smith v. Murray, 477 U.S. 527, 533, 106 S.Ct. 2661 (1986).

Procedural default can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion.  The South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time.  Furthermore, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.  A petitioner must also raise all grounds raised but denied at the PCR hearing level in his subsequent petition to the South Carolina Supreme Court for a writ of certiorari from the denial of PCR if he is to preserve them for consideration here.

### THE RELATIONSHIP BETWEEN EXHAUSTION AND PROCEDURAL DEFAULT

If a petitioner in federal court has failed to raise a claim in state court at the appropriate juncture, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed (or defaulted) his opportunity for relief in the state courts.  Under these circumstances, the exhaustion requirement is "technically met" and the rules of procedural bar apply.  Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997), cert. denied, 522 U.S. 833, 118 S.Ct. 102 (1997), citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546

(1991); <u>Teague v. Lane</u>, 489 U.S. 288, 297-98, 109 S.Ct. 1060 (1989); <u>George v. Angelone</u>, 100 F.3d 353, 363 (4th Cir. 1996). In other words, where the state court has not had the opportunity to apply its own procedural bar, the federal court will nevertheless bar the claim where application of the bar is clear. <u>Teague v. Lane</u>, 489 U.S. at 297-98.

## EXCUSING PROCEDURAL DEFAULT

Notwithstanding the foregoing, the requirement of exhaustion is not jurisdictional, and a federal court may consider claims which have not been presented to the highest South Carolina court with jurisdiction to hear the claim in very limited circumstances. <u>Cranberry v. Greer</u>, 481 U.S. 129, 131, 107 S.Ct. 1671 (1989). A federal court will review a procedurally defaulted claim if the petitioner can demonstrate cause for the default and actual prejudice therefrom, or his actual innocence of the crimes for which he is being held. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991). In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." <u>Strickler v. Greene</u>, 527 U.S. 263, 283 n. 24, 119 S.Ct. 1936 (1999), quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). A petitioner must show reasonable diligence in pursuing his claim to establish cause. <u>Hoke v. Netherland</u>, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Moreover, the claim of

cause must itself be exhausted.  Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Next, with respect to establishing "actual prejudice," a petitioner generally must show some error.  Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054, 121 S.Ct. 661 (2000).  In addition, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm, to show prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default.  O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151, 117 S.Ct. 1969 (1997). To prevail under this theory, a petitioner must produce new evidence that was not available at trial to establish his factual innocence.  Royal v. Taylor, 188 F.3d 239 (4th Cir.1999).  A petitioner may establish actual innocence as to his guilt, Id., or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).  It is a habeas petitioner's burden to raise cause and prejudice or actual innocence; if these are not raised by petitioner, the court need not consider the defaulted claim.

17

Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171, 116 S.Ct. 1575 (1996).

## BACKGROUND OF THE CASE

The respondent recited the facts of this case to which the petitioner did not and, based upon a review of the record, could not, object.

On March 8, 1994, Olivia Moshier and Felicia Ballard were strangled to death at a motel in North Charleston. A jury found that John Penza and his codefendant, James McVay, committed the murders. McVay testified that Penza was the domineering leader of a small group that included McVay, Laura Harrelson, and Felicia Ballard. (PCR App. p. 624, lines 5-17; p. 630, line 4 - p. 631, line 12). Paula Nero, an apartment manager, testified that "Big Mac and Shaborn" (identified as Penza and McVay) shared an apartment with Laura Harrelson and Felicia Ballard. Harrelson was McVay's girlfriend, although she had also been sexually involved with Penza. (PCR App. p. 631, lines 6-16). Felicia Ballard moved from New York to South Carolina in early 1994 to live with Penza as his girlfriend. (PCR App. p. 308, line 24- p. 309, line 9.) A third woman came to the group in early 1994. Olivia Moshier, also from New York, met McVay while McVay was in New York and came to South Carolina about a week before the murders. (PCR App. p. 309, line 10- p. 310, line 8). All three

18

women worked for an "escort service." (PCR App. p. 310, line 9 -
p. 311, line 21).

McVay testified that on March 7, 1994, he, Penza, and
Felicia Ballard had been smoking crack cocaine at the apartment
for two or three days. (PCR App. p. 632, lines 5-25).  Penza
bought crack from Tremaine Brown and Brown's partner, Antonio
"Baby" Smalls, approximately five times on March 7, 1994. (PCR
App. p. 283, lines 6-16).  Penza was convinced that either Brown
or Smalls had stolen Penza's gold chain from Felicia. (PCR App.
p. 639, line 22- p. 640, 1 line 3).  Brown testified that Penza
pawned the chain to Smalls to buy crack. (PCR App. p. 284,
lines 14-19).  In any event, Penza decided that he, McVay, and
Felicia would rob Brown and Smalls. (PCR App. p. 640, lines
5-11.)

The three of them drove to Brown's trailer at about 2:00
a.m. on March 8. (PCR App. p. 286, lines 3-16; p. 640, lines
5-23).  Brown testified that McVay had a sawed-off shotgun
concealed in his pants that he pulled out, and Penza took it from
him. (PCR App. p. 287, lines 1-18).  Penza told McVay to search
Brown, and McVay took Brown's money from his pocket while Felicia
grabbed two rocks of cocaine from a table. (PCR App. p. 288,
lines 8-12).  Penza then shot Brown in the stomach.  Brown fell
down and pretended to be dead.  Smalls ran.  Penza fired at

19

Smalls but missed. (PCR App. p. 288, lines 19-24).  Penza, McVay, and Felicia fled, returning to their apartment.

Sometime thereafter, Laura Harrelson, working at the escort service with Olivia Moshier, received a message to call home. (PCR App. p. 313, lines 6-20).  Harrelson called Penza, who told her to come back to the apartment. (PCR App. p. 314, line 21 - p. 315, line 3).  When she arrived, Penza told Harrelson that "a drug deal had went bad" (PCR App. p. 317, lines 10-12), and directed her to get a motel room. (PCR App. p. 317, lines 5-15). At approximately 3:45 a.m. that morning, Harrelson rented room 130 at the Super 8 Motel on Ashley Phosphate Road in North Charleston. (PCR App. p. 320, lines 2-8).  Six people, Penza, McVay, Harrelson, Olivia, Felicia, and the three-year-old daughter of Penza's wife, checked into the room. (PCR App. p. 322,lines 6-12).  Penza was "highly upset" when they arrived. (PCR App. p. 322, line 24 - p. 323, line 1).  Penza announced to his group that he had shot Tremaine Brown and shot at Antonio Smalls. (PCR App. p.323, lines 12-24).

Penza then told Harrelson and Felicia to buy some more crack cocaine. (PCR App. p. 324, lines 16-19).  Harrelson and Felicia drove to Charleston, bought the crack, and returned approximately a half-hour later. (PCR App. p. 325, lines 3-14).  Less than three hours had elapsed since Penza shot Tremaine Brown.  After the women's return, Penza and McVay smoked the crack cocaine.

20

Harrelson overheard Penza tell McVay that Olivia "knew too much now." Penza told McVay that he needed to choose either Harrelson or Olivia as his girlfriend, that Olivia "knew too much now," suggested that McVay choose Harrelson and "get rid of the other one." (PCR App. p. 329, line 18 - p. 330, line 21). Penza then directed McVay to tie up Olivia, and McVay, in turn, told Harrelson to tie up Olivia. (PCR App. p. 332, lines 8-9).

At this point, the testimony of Harrelson and McVay diverged. Harrelson testified that as she began to bind Olivia's feet, Penza told McVay that Harrelson was not using the correct knots. (PCR App. p. 334, line 10 - p. 335, line 11). Penza told McVay to put Olivia on her stomach and to wrap the electrical cord, which Harrelson was using to bind Olivia, around Olivia's neck. McVay finished tying up Olivia. Penza then told McVay to pull on Olivia's feet, and he did so. Olivia choked to death. (PCR App. p. 336, line 3 - p. 337, line 14). McVay testified that Penza told Harrelson to bind Olivia and that she did so on her own. He testified that he did not participate in the murder. (PCR App. p. 650, line 3 - p. 651, line 23).

After the murder, Penza told Harrelson and McVay to drive to Goose Creek to get some clothes and hair clippers from the apartment. (PCR App. p. 339, lines 12-21). Harrelson and McVay drove to the apartment, had a decal removed from the rear window of Penza's car, drove to the home of the escort service owner and

21

collected Harrelson's final wage payment, drove to the Naval
Weapons Station at Goose Creek and withdrew money from the
federal credit union, and returned to the motel. (PCR App. p.
340, line 1 - p. 342, line 8).

The decal which was removed from Penza's car read "Mac or
die." (PCR App. p. 340, lines 22-24). (See also, PCR App. p. 135,
lines 1-23). Paula Nero, Penza's landlord, who knew Penza as
"Big Mac," "Neil Rackley,""Morris Williams," and "Mac Daddy,"
testified the "Mac" name designated the leader of the group. (PCR
App. p. 262, line 12 - p. 263, line 11).

When Harrelson returned, she heard Penza "kidding around
with Felicia about taking some rock [crack cocaine] off the
table." Harrelson testified that McVay became angry about this
supposed theft. Felicia told McVay that she would take her
clothes off and he could search her. (PCR App. p. 344, lines
12-20). Penza and Harrelson left the hotel room and stood by the
car. Harrelson then heard the motel room door open and heard
Felicia call for help twice. McVay jerked Felicia back into the
room. (PCR App. p. 346, lines 2-9). Harrelson then saw McVay
open the door and call Penza over to the room. Penza told
Harrelson to open the trunk of the car. Harrelson saw Penza and
McVay put the bodies in the trunk. (PCR App. p. 346, line 11 - p.
347, line 18). McVay testified that he and Penza were both in
the room with Felicia. He testified that Penza was angry with

22

Felicia for allegedly stealing the crack cocaine. According to McVay, Penza pointed the shotgun at Felicia and ordered her to disrobe. Then Penza struck her; Felicia fell to the floor, and Penza "put his hands around her neck and strangled her." (PCR App. p. 608, line 4 - p. 609, line 25).

Penza instructed Harrelson to wipe the room down for fingerprints and to take the bloody sheets off the bed. (PCR App. p. 347, lines 20-22). The group took the bodies to an isolated area near Interstate 26 where McVay dragged the bodies down the embankment into the woods. Penza directed McVay to shoot the victims' faces and hands to prevent identification. (PCR App. p. 663, line 19 - p. 666, line 17).

A passing truck driver discovered the bodies the following day. (PCR App. p. 122, line 2 - p. 123, line 11). Penza and McVay were arrested, approximately one month later, in Charlotte, North Carolina. (PCR App. p. 668, line 24 - p. 673, line 8).

## DISCUSSION

A review of the record and relevant case law reveals that the petition should be denied. The petitioner's grounds for relief, except the previously withdrawn third ground, will be reviewed seriatim.

In his first ground for relief, Petitioner asserted that his trial counsel, Lionel Lofton, was constitutionally ineffective in the following manner: "during my trial, my attorney allowed an

23

unrelated assalt [sic] against a woman in a totally different county to become a matter of record. At no time did trial counsel object to this alleged assalt [sic] testimony. This prejudiced me extreemly [sic] due to the fact that I was on trial for allegedly murdering 2 female victims as it were."

This ground was raised and denied by the PCR judge and was raised to and affirmed by the South Carolina Supreme Court. It is therefore available for review here on the merits. Matthews, supra.

When reviewing the decisions of state courts by the deferential standard of review required by the AEDPA, the court is to examine the last reasoned decision by the state court on the merits, here the decision of the PCR court written by Judge Patterson. See, Ylst v. Nunnemaker, 501 U.S. 797, 801-02 (1991).

At issue here is the fact that trial counsel Lofton did not object to the question of the codefendant's counsel concerning whether Petitioner "liked tough girls" and whether Petitioner had Harrelson go over to a neighbor's house to "punch out" a woman named Francine, (PCR App. p. 1214). Harrelson testified, in response to the questions of co-defendant's counsel, that while she did not punch "Francine" at Petitioner's direction, Petitioner, in fact, slapped Francine. (PCR App. p. 403, line 6-p. 404, line 2). Petitioner believes that the failure to

24

object constituted constitutionally infirm assistance and that
the testimony prejudiced his defense.

First the PCR Judge, Roger Young, correctly identified and
relied upon the Supreme Court standard governing ineffective
assistance of counsel claims found in Strickland v. Washington,
466 U.S. 668, 104 S.Ct. 2052 (1984). In order to succeed on such
a claim, Petitioner must show his counsel's performance was
"deficient," Strickland, 466 U.S. at 687-88, and that such
deficiency resulted in actual prejudice to Petitioner. Id. As
to the first prong of the Strickland test, a defense attorney's
conduct is deficient if it fails to meet a standard of
"reasonably effective assistance." Id. at 687. "A fair
assessment of attorney performance requires that every effort be
made to eliminate the distorting effects of hindsight, to
reconstruct the circumstances of counsel's challenged conduct,
and to evaluate the conduct from counsel's perspective at the
time." Strickland, 466 U.S. at 689.

Still, and most importantly here, in addition to showing
ineffective representation, Petitioner must also show "that there
is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different. A reasonable probability is a probability
sufficient to undermine confidence in the outcome." Strickland,
466 U.S. at 694. If a petitioner fails to establish either

25

Strickland prong, ineffective representation, or that, as a
result of counsel's error, the result of the proceeding would
have been different, his claim fails.

Judge Roger M. Young reasonably found that Lofton's failure
to object did not satisfy the second or prejudice prong of
Strickland and, therefore no relief should issue.  The judge
noted that the petitioner had the burden of demonstrating that
counsel's performance prejudiced him to the extent there is a
reasonable probability that, but for counsel's failure to object,
the result of the trial would have been different.

Judge Young concluded:

> I have reviewed the referenced testimony and
> conclude that Applicant has not established
> prejudice.  First, the incident did not involve
> serious injury or the use of weapons.  The
> Tremaine Brown testimony is much more prejudicial,
> though properly admitted.  In context of the
> entire trial, I do not find this passage harmful.
> In addition, the testimony shows more independence
> from Ms. Harrelson than her testimony regarding
> Applicant's control over her.  In this respect,
> the testimony was helpful to applicant in
> establishing that he did not direct Ms. Harrelson
> to aid in the strangulation of the first victim,
> and that she, without question, did so.
>    Applicant has failed to establish error and
> prejudice. He is not entitled to relief on this
> issue.

(PCR App. pp. 1214).

The facts of record fully and fairly support the judge's
findings that no prejudice occurred.  Here, the trial focused on
a group whose members were kept under control by threats, and

26

infliction of physical violence by the leader, Petitioner. (PCR
App. p. 413, line 8 - p. 414, lines 23; p. 624, line 5 - p. 625,
line 18). As previously noted, immediately before the murder of
Olivia Moshier and Felicia Ballard, Petitioner, McVay, and
Ballard, went to Tremaine Brown's home. Petitioner shot Brown in
the abdomen and shot at Brown's associate. (PCR App. p. 288, line
6 - p. 290, line 23).

The testimony in question here simply continues painting the
picture of control and the group dynamic, but in a much less
graphic fashion. Moreover, though Petitioner complained that the
slap had absolutely no relevance to the crime charged, (Cert.
Pet. p. 18), it was relevant, even if not ultimately fully
favorable to the codefendant's defense of domination by
Petitioner over the other members of the "family." Indeed, the
testimony was not offered as a "prior crime," as suggested by
Petitioner, but as a response to questions by codefendant's
counsel regarding Petitioner's control. Lastly, as the PCR judge
correctly pointed out, the testimony shows independence not
normally shown in other testimony, which would give rise to
questions about Petitioner's "absolute control" over his group
that was otherwise established.

It cannot be said that failure to object to this line of
questioning by the codefendant's attorney undermines confidence

27

in the outcome of the trial.   Under AEDPA standards, Petitioner
is not entitled to habeas relief on this ground.

In his second ground for relief, Petitioner asserted that
appellate counsel was ineffective for not challenging the trial
court's decision to admit testimony that Petitioner robbed a drug
dealer named Jessie in Goose Creek a week before the murders.
Specifically, Petitioner framed his ground as:

> Ground two:   Ineffective Assistance of Appellate
> counsel;
>
> Supporting Facts:  Appellate Counsel failed
> to raise, brief, and argue regarding yet another
> uncharged crime that The trial judge ruled was
> inadmissible but later overruled his own ruling
> and let in, over Trial counsel's objections, it
> was allowed into evidence via testimony from my
> co-defendant even though this uncharged crime was
> objected to by trial counsel. It involved an armed
> robbery in Berkeley County approximately one week
> prior to the incident for which I was on trial.

This ground was not ruled upon by the PCR court so it had
been procedurally defaulted when the South Carolina Supreme Court
denied Petitioner's writ of certiorari from the denial of PCR.
As such, the court should not review this allegation on its
merits and should deny relief.

In his direct appeal, Petitioner asserted that the trial
court erred in not severing his trial from codefendant McVay's
trial and cited, as an example of prejudice testimony that he
robbed Jessie.  However, on appeal Petitioner did not assert that
the trial court erred in allowing testimony about the robbery of

28

Jesse.[1]  He now asserts that appellate counsel was
constitutionally ineffective for not having brought that claim.

Petitioner alleged that appellate counsel's efforts in his
direct appeal on the severance ground were not strong enough.
Judge Young ruled that appellate counsel adequately presented the
severance issue to the South Carolina Supreme Court in the Final
Brief of Appellant.  Further, Petitioner cannot show that he
would have been successful on appeal if the severance issue had
been presented differently . (PCR App. p. 1210-1211).
Thereafter Petitioner raised the claim he presents in the instant
habeas petition as a free-standing issue claim in the PCR appeal,
however, Respondent asserted the issue was procedurally barred as
it was neither raised before, nor ruled upon by, the PCR judge.
(Return to Cert. Pet., p. 16). See, Simpson v. Moore, 367 S.C.
587, 600 n. 3, 627 S.E.2d 701, 708 n. 3 (2006)(issue not
addressed by PCR judge not preserved for review on appeal);
Humbert v. State, 345 S.C. 332, 338, 548 S.E.2d 862, 866
(2001)(same).  Since the issue could not be addressed on appeal,
the issue has not been properly exhausted.  See, Murray v.
Carrier, 477 U.S. at 485, 106 S.Ct. at 2644 (the presentation
must be in compliance with state procedure to be properly
presented and available for review).

---

[1] Again, on direct appeal Petitioner did specifically raise
the court's failure to bar testimony about his shooting of
Tremaine Brown.

29

A federal habeas claim has not been exhausted unless the substance of a petitioner's claim is "fairly presented" to the state courts.  The <u>Matthews</u> court explained, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined.  Oblique references which hint that a theory may be lurking in the woodwork will not suffice.  In other words, fair presentation contemplates that both operative facts and the controlling legal principles must be presented to the state court."  <u>Matthews v. Evatt</u>, 105 F.3d at 911. Petitioner did not comply with this mandate and as a result the claim is not available for review.

Petitioner has made no argument in regard to cause for the default, and none is readily apparent on this record.  Moreover, a claim of actual innocence is not credible on this record reflecting witness testimony recounting the murders and Petitioner's fleeing the state.  The procedural bar should be applied.

Petitioner's fourth claim is that the trial court erred in denying his motion for a severance of his trial from codefendant McVay's trial:

> Ground four:  Denial of a Severance Motion by trial Judge;
>
> Supporting Facts: Long before trial during pretrial hearings counsel for co-defendant McVay quite frankly admitted that the crux of his defense involved prejudicing me.  However the trial judge's position was since it was the co-

30

> defendant's counsel doing the prejudicing and not
> the state he did not owe me any protection from
> such instances of prejudice that would (and did)
> arise during the course of the trial.

Petitioner is not entitled to relief on this issue since
Petitioner has never presented to the state courts any allegation
that the court's decision violated any right protected by the
federal constitution, 28 U.S.C. § 2254(d)(1), and habeas relief
will not lie for alleged violations of state law. Generally,
severance is a question of state law not cognizable in federal
habeas proceedings. See, e.g., Fox v. Ward, 200 F.3d 1286, 1292
(10th Cir. 2000) (citing Cummings v. Evans, 161 F.3d 610, 619
(10th Cir. 1998)), cert. denied, 531 U.S. 938, 121 S.Ct. 329, 148
L.Ed.2d 264 (2000).

This claim was presented in the state court on direct appeal
as an allegation that the decision not to sever violated
principles contained in South Carolina case law and South
Carolina Rules of Evidence. On appeal, no reference was made to
any federal law, much less "plainly defined" federal law.
Matthews v. Evatt, 105 F.3d at 911. "Oblique references which
hint that a theory may be lurking in the woodwork will not
suffice." Id.

Additionallly Petitioner has not demonstrated cause for the
default and actual prejudice therefrom, or his actual innocence
of the crimes for which he is being held. Coleman v. Thompson,

31

501 U.S. 722, 750, 111 S.Ct. 2546 (1991). This ground should be dismissed.

Petitioner's fifth and final ground for relief is:

> Ground five: Introduction of an uncharged crime, to wit; an armed Robbery committed in Charleston County Allegedly by petitioner. The Solicitor argued that his firm belief was that this alleged Armed Robbery was the reason why the murders ended up being committed, which is why the judge overruled his own ruling reversing himself and let his testimony in. Yet nothing in the testimony throughout the duration of the trial established that the alleged armed Robbery was in fact the reason for the subsequent homocides [sic].

Again, Petitioner has failed to state a claim upon which relief may be granted. Relief in federal habeas may only be granted upon a showing of an improper application of federal law. 28 U.S.C. § 2254(d)(1). Petitioner did not set forth any federal law in support of this assertion when he presented it to the South Carolina Supreme Court on direct appeal, and the ground was denied by citation in a memo opinion to a state case. Moreover, general evidentiary issues do not ordinarily raise an issue of federal law. See, Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991)(habeas corpus relief not available on allegation that state court improperly interpreted or applied state evidentiary law).

This issue also should be dismissed.

### CONCLUSION

Accordingly for the aforementioned reasons, it is

32

recommended that the respondents' summary judgment motion be granted and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

January 28, 2008

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985).